UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21981-Civ-WILLIAMS/TORRES

R.P.M. Diesel Engine Co.,

    Plaintiff,

v.

M/V "3K" an Azimut
manufactured 67' motor vessel, her boats,
engines, tackle, equipment, apparel, furnishings,
freights, appurtenances, and all fixtures and
other necessaries there unto appertaining and
belonging to the vessel, *in rem*.

    Defendant.

_____/

**REPORT AND RECOMMENDATION
ON MOTION FOR COUNTER-SECURITY**

This matter is before the Court on Azimut 68S Acquisitions, Ltd.'s (the "Owner") motion for counter-security against R.P.M. Diesel Engine Co. ("Plaintiff"). [D.E. 18]. Plaintiff responded to the Owner's motion on August 18, 2020 [D.E. 19] to which the Owner replied on August 28, 2020. [D.E. 23]. Therefore, the motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authority, and for the reasons discussed below, the Owner's motion for counter-security should be **GRANTED**.[1]

---

[1] On August 19, 2020, the Honorable Kathleen Williams referred the motion for counter-security to the undersigned Magistrate Judge for disposition. [D.E. 20].

## *I.  ANALYSIS*

On May 12, 2020, Plaintiff filed a verified complaint to recover for labor, materials, and other services that it provided to M/V "3K" (the "Vessel") but for which payment has not been made. Specifically, in October 2019, Plaintiff completed certain repairs on the Vessel and submitted two invoices for payment. These invoices included a grand total of $39,853.96. [D.E. 1-3]. Plaintiff alleges that it made several attempts to contact the Owner to pay the outstanding bill but that each of those attempts proved unsuccessful. Plaintiff therefore filed this action to assert a maritime lien under the Federal Maritime Liens Act ("FMLA") 46 U.S.C. § 31342 *et seq*.

On June 4, 2020, Plaintiff filed a motion to arrest the vessel [D.E. 4] and the Court granted that motion later the same day. [D.E. 7]. The Owner then filed a statement of interest on June 23, 2020 [D.E. 11], asserting ownership to the arrested Vessel. Seven days later, the Owner filed an unopposed motion for release of the Vessel pursuant to Supplemental Rule E(5) and Local Admiralty Rule E(8)(b) and a stipulation between the parties. This stipulation required the Owner to post security in the amount of $65,000 dollars and for that to be posted into the Court's registry. The Owner later filed an answer with affirmative defenses and a counterclaim on August 3, 2020 for breach of contract, breach of an implied warranty, and negligence. [D.E. 17]. Altogether, the Owner seeks $85,509.91 in damages, prejudgment interest, court costs, and fees.

The FMLA grants a maritime lien to a party that provides necessaries to a vessel. A maritime lien is "[a] special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises[.]" *Galehead, Inc. v. M/V ANGLIA,* 183 F.3d 1242, 1247 (11th Cir. 1999) (alterations in original) (quoting *Black's Law Dictionary* 969 (6th ed. 1990)). Maritime liens are different than common law liens because the former is "not simply a security device to be foreclosed if the owner defaults"; rather, a maritime lien converts the vessel itself into the obligor and allows injured parties to proceed against it directly. *See Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) (citation omitted). "In other words, '[a] maritime lien gives its holder a properly right in a vessel, and the proceeding *in rem* is . . . a means of enforcing the property right.'" *Id.* (citation omitted). For a party to establish a maritime lien in a vessel: (1) the good or service must qualify as a "necessary"; (2) the good or service must have been provided to the vessel; (3) on the order of the owner or agent; and (4) the necessaries must be supplied at a reasonable price. *See Barcliff, LLC v. M/V Deep Blue, IMO No. 9215359*, 876 F.3d 1063, 1068 & n.5 (11th Cir. 2017).

After the Owner posted $65,000 dollars as security into the Court's registry, it now requests that Plaintiff do the same pursuant to Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Admiralty Rules"):

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the same transaction or

3

> occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for *cause shown*, directs otherwise.

Rule E(7)(a), Admiralty Rules (emphasis added). The purpose of Rule E(7) is to "place the parties on an equality as regards security." *Afram Lines Intern., Inc. v. M/V Capetan Yiannis,* 905 F.2d 347, 349 (11th Cir. 1990) (citations and quotation marks omitted). On the other hand, the Rule is not intended to impose burdensome costs on a plaintiff's prosecution of its suit as a maritime lien holder. *See Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.,* 56 F.3d 394, 400 (2d Cir. 1995); *Expert Diesel v. Yacht "Fishin Fool,"* 627 F. Supp. 432, 433 (S.D. Fla. 1986). Ultimately, "Rule E(7)(a)'s use of the term 'must' makes clear that counter-security is the default position," and that "[c]ounter-security may be denied only 'for cause shown,' which places the burden on the party resisting it." *Harrison Bros. Dry Dock & Repair Yard, Inc. v. Pan Agri Int'l, Inc.*, 2009 WL 825953, at *1 (S.D. Ala. Mar. 25, 2009).

In furthering the purpose of Rule E(7), district courts have broad discretion to determine whether (and in what amount) counter-security shall be posted. *See Afram,* 905 F.2d at 349. The district court's determination must be guided, however, by several considerations:

> First, the court should be reluctant to order counter-security if the plaintiff does not, by the posting of countersecurity, seek to release its property from the counterplaintiff's custody. Second, the court should determine whether the counterplaintiff could initially have brought its claim *in rem* or *quasi in rem*. Where the counterplaintiff could not have proceeded in this manner, there seems little justification for ever requiring a larger bond on the counterclaim than is required in the

4

> original action. Additionally, the court should consider, if applicable, the plaintiff's financial ability to post countersecurity, and the extent to which the counterclaim may be deemed frivolous.

*Id.* (citations and quotations marks omitted).

Turning to the facts of this case, the first factor weighs in Plaintiff's favor because it does not seek the release of any property. Plaintiff merely wants to be compensated for the work performed on the Vessel. The second factor also favors Plaintiff because the Owner did not file his counterclaim *in rem* or *quasi in rem*. Instead, the Owner's counterclaim was filed *in personam*. When these two factors are met, Plaintiff suggests that this should end the inquiry, that no counter-security should be required, and that the Owner's motion should be denied.

The problem with Plaintiff's argument is that it does not go hand in hand with the Eleventh Circuit's prior decisions. The satisfaction of these factors only means that "district courts should not, absent extraordinary circumstances, require claimants . . . to post countersecurity *in an amount which exceeds* the security posted on the original claim." *Afram*, 905 F.2d at 349 (emphasis added). It does not mean that the analysis ends and that no counter-security should be posted; it merely means that these factors limit the amount to be posted. *See, e.g.*, *Harrison Bros.*, 2009 WL 825953, at *1 ("The accumulation of these factors, however, does not support a finding of cause to require no counter-security."); *see also Afram Lines*, 905 F.2d at 349-50 (upholding the countersecurity requirement, but only in an amount equal to the security posted by the plaintiff, even though the plaintiff did not wish to release the property and the defendant could not have proceeded against

5

the plaintiff *in rem*); *S & S Diesel Marine Servs., Inc. v. M/V F-TROOP*, 2011 WL 1899402, at *16 (S.D. Fla. May 18, 2011) ("As the amount of Fleisher's claim, if successful, exceeds the amount of the bond, in light of *Afram*, this Court sets the countersecurity in an amount equal to the bond: $53,420.20."). Thus, there is an open question as to whether Plaintiff should be required to post an amount that is less than or equal to $65,000 dollars. *See Bradford Marine, Inc. v. M/Y Jani,* 2005 WL 5166203 at *2 (S.D. Fla. 2005) (satisfying the first two *Afram* factors did not establish cause to deny counter-security).

As to the third factor, Plaintiff never speaks of its financial ability to post $65,000 dollars as counter-security. There has also "been no showing or indication that the posting of counter-security would inequitably and unjustifiably burden Plaintiff's prosecution of the maritime lien." *Bradford Marine*, 2005 WL 5166203, at *2. Plaintiff only suggests that it would be unjust to require this payment when it "has already been saddled with the costs for parts and labor from the repairs . . . performed on the [V]essel." [D.E. 19 at 4]. This is not a persuasive argument because it overlooks the damages that the Owner suffered. The Owner alleges, for example, that it too sustained damages (of approximately $85,000) because – when Plaintiff attempted to repair the boat – Plaintiff failed to use safe and reasonable standards to care for the engine. Plaintiff assumes that only its damages are what matters, but the Owner has potentially lost more than $20,000 dollars in excess of Plaintiff's damages. And when coupled with the omission of any argument as to

6

Plaintiff's financial ability to post $65,000 dollars, the third factor favors the posting of counter-security.

Plaintiff then argues, with respect to the fourth factor, that the Owner's counterclaim is frivolous because it lacks the required facts to state a plausible claim for relief. But, if that was true, it raises the question as to why Plaintiff never filed a motion to dismiss the counterclaim. In any event, after a thorough review of the Owner's counterclaim, we cannot conclude that the pleading is frivolous. Plaintiff states that the counterclaim is conclusory, lacks specificity, and fails to rely on any evidence in support of its damages. While the counterclaim is not the most elaborate pleading, the Owner alleged many, if not all, of the required elements to state a claim for breach of contract, breach of implied warranty, and negligence. We must also remember that, in filing a counterclaim, a party is not required to prove its case on the merits or to present evidence. It only needs to state a plausible claim for relief. And even if the Owner has not complied in all respects with Fed. R. Civ. P. 12(b)(6), it would be a far stretch to conclude that the counterclaim in this case is frivolous based on the allegations presented.

In sum, Plaintiff has failed to show cause as to why the Court should deviate from the default rule that requires the posting of counter-security. *See* Rule E(7)(a), Admiralty Rules. While there is no need for Plaintiff to post an amount *in excess* of $65,000 dollars, the same amount is appropriate "to place the parties on equal footing." *S & S Diesel*, 2011 WL 1899402, at *16. The Owner's motion should therefore be **GRANTED** and Plaintiff should be required to post $65,000 as

7

counter-security into the Court's registry within fourteen (14) days from the date the District Judge adopts this Report and Recommendation.

## II. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Owner's motion for counter-security be **GRANTED** and that Plaintiff be required to post $65,000 as counter-security into the Court's registry within fourteen (14) from the date the District Judge adopts this Report and Recommendation.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 10th day of September, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge